243308 USA v. Ronnie Radovic, 243309 USA v. Corey Wright, 243364 USA v. Algin Kearney, 243389 USA v. Idris Jackson, 243400 USA v. Alfred Sanders, and 243438 USA v. Nassar Kahok. 30 minutes to be shared by defendants, 30 minutes for plaintiff, 243438 to be submitted on briefs. Ms. Cobb, you may proceed. Good morning. Morning. May it please the court, my name is Britt Cobb. I am pleased to be here on behalf of defendant appellant Ronnie Radovic discussing his sentence with you. I have not reserved any time for rebuttal given our truncated timeline. The court has said repeatedly since it decided the case of United States v. Lee in 2020 that with respect to criminal history related upward variances there should be a meaningful relationship between the sentencing offense and the prior convictions such that the similarities demonstrate a need for deterrence beyond that already captured by the guidelines. In light of that, Mr. Radovic's matter asked whether it was reasonable for the district court to vary upward 70, 80, 90 percent from the guideline range in a mine run, nonviolent drug case where on the basis of the defendant's criminal history that involved incidents of domestic violence, precedent of the court says that it was not reasonable. Neither domestic violence nor any violence at all had anything to do with the sentencing offense and not only did violence not have anything to do with the drug offense as it related to Mr. Radovic but that criminal history was already accounted for under the guideline criminal history category score. My understanding, if I'm remembering correctly, is that your client had previously served an eight-year sentence on a different count, on a different crime. Is that correct, perhaps, in state court? Yes, I believe it was from the early 2000s he had an eight-year sentence for a drug offense. Is it appropriate for the district court judge to take that into account considering things like deterrence or other things? I understand your argument as to meaningful relationship and subject matter but what about, I don't know, deterrence and public safety and other things given recidivism after an eight-year sentence? I do believe that the court can take that into account. However, in this particular case, the district court was quite clear that the reason it was varying upward was because of the domestic violence history. It said in really no uncertain terms that the domestic violence was the reason for the variance and if I may, I'll quote from the sentencing hearing transcript at page ID 3305, the defendant has an extraordinary record of violence, in my opinion, particularly the violence to women. That's why I believe an upward variance is clearly in order here based on this record and this history. This wasn't a case where the domestic violence history was kind of a reason or one of many reasons. The district court was very specific that it was the reason. The reason, even though the court specifically talked about other interesting things like this particular current offense was committed while he was on state supervised release and the fact that he did have a record of drug offenses in the past, those aren't reasons that the court gave? Well, I agree with you that there was a discussion of all of those things as he discussed the 3553A factors, but when it came to articulating the reason for this variance, it was very explicit that it was related to the domestic violence history and protection of women and he said that a number of different times. It sounded as though he referenced the extensive criminal history of your client and mentioned the domestic violence as a highlight, but he referenced the criminal history altogether, so it didn't sound like he was limiting his concern to domestic violence. Well, Your Honor, I read it differently based on the passage that I just read to you and I think that the court generally is very wary. I believe the court used that language in United States v. Lee, wary about pretty extreme criminal history variances. Does it make any difference to the way we're looking at this that he didn't object to the upward variance at sentencing? I don't think so. The reasonableness of sentences is something that we can always raise. He asked for a guideline sentence, so I believe that would be adequate. We're not on a plein air review looking at something that was not objected to? I don't believe so, Your Honor. The court's cases have illustrated scenarios where criminal history and sentencing offense conduct are similar enough to have this meaningful relationship that the court has said that we want to look at. I think the most instructive case is United States v. Cicchini. Hopefully I'm saying it right. It's in our brief, C-E-C-H-I-N-I. There, the defendant did have a history of domestic violence. The sentencing offense was felon in possession of a firearm. The court noted that while normally those things wouldn't necessarily have that meaningful relationship, because the defendant was found to be a felon in possession during a domestic violence call, the court properly was able to consider the domestic violence history in a pretty significant upward variance. Looks like I should stop talking, but thank you again for having me. It's always a real privilege. Thank you very much. Good morning, Your Honors. May it please the court, my name is Scott Graham and I'm here on behalf of Corey Wright. First, I'd like to begin so that there's not too much repetition in adopting everything that Ms. Cobb said about the need to have a relationship between the underlying offense for which they're sentencing and the criminal history. In this particular case, the equities of the case at the sentencing hearing, in my opinion, line up overwhelmingly in favor of Corey Wright. The amount, the drug quantity for which he was found to be responsible was 36 grams. Without question, he offered to the court a very troubled upbringing that certainly was mitigating in nature. The parties, in a binding way, agreed that the appropriate guideline sentencing range would be no more than 37 months. If, in fact, Mr. Wright had received no reduction in levels for acceptance of responsibility, the sentence would have been 41 to 51 months. Mr. Wright went into sentencing with all of these things in play and walked out with a sentence of 57 months. In his history, he has drug convictions, but with one exception, they are possession, straight possession convictions. Nothing about conspiracy, nothing about delivery. He has a very old attempted delivery case sentence for which he served three days. We believe, in this particular case, it's very clear that all of his prior conduct is built into the guidelines. Of course, the parties, both sides, agreed with that. The author of the pre-sentence report agreed as well, finding that there was no basis for variance. Now, I understand that ultimately, because this was a non-binding agreement, that the person or the party that matters is the court. I understand that. But when, in fact, there is nothing that really, in his history, that lines up with this particular offense, and again, I am making the argument and the assumption that mere possession is not conspiracy to possess with intent. What do you do with the cases that say that a sentencing judge can take into account factors in determining variances that are also covered in the guidelines? There is, as you know, quite a number of cases that say that. It sounds as though you're making that your principal argument. Well, no. I think it's a very important argument. But I understand that there is a body of case law that says that those matters can be considered by the sentencing judge, even if they're incorporated into the scoring, establishing, in this case, the criminal history level of four. But my position is that there has to be a meaningful consideration of prior conduct that makes those offenses something that really are not incorporated in the scoring. I understand there can be offenses that are scored that probably, when the scoring may not recognize the seriousness of the offense. I understand that. That's not what happened here. I understand that the district court judge spent some time talking about the shooting that maybe your client was involved with when he was sixteen years old. Is that correct? That's correct, Your Honor. How is it appropriate for the district court judge to take that into consideration? How does that factor into the analysis here? Your Honor, I don't think that it should factor in, in light of the overall facts, Mr. Wright's age at the time of this offense, and in light of his youth at that time, and in light of the fact that there is no intervening event that demonstrates a continuation of anything like what he may have been involved in then. I think that's where we get down to the question of, even though the court has discretion, broad discretion, and even though there will be deference to many of the findings, when they get so out of line with what the actual facts are, I think that's when this court has the authority to take a look at the fact that there isn't a connection. There has been this huge passage of time, and in light of all the other equities that . . . But can the court take into account a failure to pay much attention to the deterrent effect of other convictions or sentences? Yes, Your Honor. I think the court has the right to do that. I simply, in regard to that, would argue that the facts here, in light of the offenses involved, didn't justify reliance. But in the general principle, I would agree. By the way, did your client enter into an appeal waiver as a part of the plea agreement? He did, but he did not waive an appeal from any sentence that exceeded the guideline range as established by the trial court. And the trial court here, of course, the guideline range was calculated and agreed to by the parties in the pre-sentence report writer. The sentence exceeded that, so no, he did not waive his appeal. Thank you. Your Honors, may it please the court. My name is Nathan Ray. I represent Mr. Algern Kearney in his appeal here this morning. This is a straightforward issue. It was a four-level enhancement that was determined by the writer of the PSI that it applied. It was a four-level enhancement for marketing or knowingly misrepresenting or knowingly marketing fentanyl. In other words, what he did was he possessed pills. At the time of his arrest, the police came into his house. He said, yep, they're marked as Percocet, but oh, by the way, they're fentanyl pills. He admitted that. The prosecutor knew about it. I knew about it. We go through the whole process. We enter into a plea agreement. We don't include the four-level enhancement. The writer of the PSI did do an enhancement based upon this four-level increase. So there was an objection made at the trial court, and we had a hearing on it. And the court made the determination that the possession of these was sufficient to justify a four-level enhancement of the sentencing guidelines. And it was a substantial increase. Anytime you're going four levels up on the guidelines. In this case, he went from, I believe, about 70-some months. At the low end, he went from 78 to 79 months, to 121 to 151 months. And the court sentenced him to 151 months. So it was a substantial increase in his sentencing guidelines. And then, as the court was aware, there was the additional 60 months that ran consecutive to that. At the district court, the argument was, my argument was, and his position was, look, I possessed them. I knew they were fennies. I knew they were fentanyl. I knew they were marked as Percocet. I never marketed them. I never sold them. I never put them out there on the street as anything at all. The question at the time of his arrest was, did you know these were fennies? Yes, I knew they were fennies. And that was it. Wasn't there evidence that your client and his cohort sold the pills, marketed as oxycodone, even though they were actually fentanyl? Your Honor, I'm not sure what the other defendants in this case did. I know that in this case, if you look at the indictment, all of the possession cases that he had occurred on May 25th, 2023. That's when they went into his house and they found the drugs. That's when he made the statement to them, oh, by the way, this is fenny. But your client was saying that, well, the police found blue pills that your client identified as fake Percs, but actually contained fentanyl. Is that correct or not correct? That is correct, sir. That is absolutely correct. Well, then you don't have much of an argument, do you? Well, his position is that that's mere possession. In other words, the government admitted at the district court that, oh, by the way, he never sold any of these. We don't have any buys from him. We don't have any sales from him. We don't have anything. All we have is that he was in possession of them. And if you look at 2D1.1B13, it says you have to knowingly market or you have to knowingly promote. And in this situation, we don't have that. I know in U.S. v. Allen, this court said, hey, you know what, because of the fact that he knew what he was selling was Percs or was fentanyl, even though it was marked as heroin. In that situation, the guy had said, look, I didn't know that they were fentanyl. And so, oh, by the way, I can't be held responsible. Here, we're kind of on the opposite side of the coin. We're saying, oh, by the way, we knew that they were fentanyl. We just never marketed them. Go ahead. The court wasn't entitled to draw the inference that all these pills that were marked as if they were Percocets but that he knew well were fentanyl. He was just going to keep them and enjoy having them in his drawer? I don't believe that that would have been the case, Your Honor. But I don't think that any of the fact that he merely possessed these pills. And what we're trying to do here is we're trying to get to the four levels up. Well, but the district court made a finding, and I think it's pretty clear the record, that he was selling. And so to take maybe a variant of Judge Batchelder's hypothetical, can the district court make a reasonable assumption that he's selling pills that look like real Percocet as Percocet and not telling people that they have fentanyl in them? Even though we have a lower standard on these issues, no, I don't think that the court made the proper decision. Because I don't think you can simply say he was in possession. Because everybody then that is in possession of fentanyl that's marked as Percocet or a different drug then becomes the four-level enhancement. I don't think that... What was the quantity that he had? At that resonance, there was 40.215 grams of, I'm sorry, yeah, 40.215 grams of fentanyl that he possessed. They were in pill-shaped forms. It's my understanding and my recollection as judge. So it's not a small amount. There was a good amount of drugs. But I think in order to get to the four-level enhancement that the court applied in this case, there has to be something more than he possessed them. And I agree with you. The court, I think, made the determination that he did, was selling them. But the government said at the hearing, look, we don't have any sales. We don't have any buys. We don't have any proof that he was actually on the street selling these. I think, just a caveat, I mean, perhaps a little more accurate to the record. I think the finding here and the government saying, like, he was selling them, right? Mr. Lewis, for the government, says he was selling them. I think the question was, did the government have any proof that he was selling them as real Percocet as opposed to selling them and being, you know, and saying these are fatties, like these have fentanyl in them, right? I think, I don't think, at least reading the record here, that the government says they have no evidence of sale. They knew that there were sales, that they just didn't, there was no evidence in the record to support the four-level enhancement. Right, to how they were represented during sale. Exactly, that's correct. Yes, and I see my time is up, Your Honor. Thank you so much for your attention here this morning. Appreciate it. Thank you. Good morning, Your Honors. May it please the Court, Leif Christman on behalf of Idris Jackson. Your Honors, Idris Jackson's sentence was both procedurally and substantially unreasonable. It was procedurally unreasonable because counsel wasn't provided notice of upward variance prior to sentencing. It was substantially unreasonable because my client's sentence was too long. He was given 51 months in federal custody. The average sentence for a person in my client's guideline in criminal history is 29 months. The mean is 30 months. The judge went five months above the guideline sentence for the range in which he was ultimately placed. I think it's significant, Judge, if you look at the way the calculation was done for my client's guideline. His base offense level was 24. He was given a two-level adjustment downward for safety valve. Now, we know safety valve is for people with very minimal criminal history, all the other qualifications, but focusing on the criminal history, that's one of the components to get safety valve. So I've never had somebody who got safety valve but then was given upward variance because their criminal history was bad or particular parts of the criminal history that the court relied upon to give the variance. So I would indicate, Judge, procedurally I would have argued if I'd been given notice prior to the hearing that my client was going to face an upward variance, I would have argued a couple things. I would have focused on his criminal history. I would have looked and saw that he got four criminal history points just based on one-point offenses, and that's the most you could get. So he's got four one-point offenses, which puts him at a criminal history Category 3. Now, a criminal history Category 3 applies for people that get four, five, and six criminal history points. So I would argue that his criminal history is actually over-represented, and I would have looked at a couple of the one-pointers that my client accumulated to get all the way to a criminal history Category 3, and I would have seen he got a point for a minor misdemeanor weed ticket, marijuana ticket. Marijuana is illegal in Ohio now. So he couldn't have even gotten that criminal history point if he'd been convicted or if that had been something that was contemporaneous. Now, I understand that Sixth Circuit law, and I understand federal law, that it's still illegal and that can be counted, but he would have never gotten that one criminal history Category point should he have had marijuana been legal at the time. The other thing I would look at is the one point my client got for child support. Now, my client's got five kids. He got behind in child support. He got a one criminal history point for felony non-support of his children. I know that he was doing his best. I know that he got behind. I know they had some drug issues himself he was using, and so, you know, those two points I think I could have made some good arguments that his criminal history is actually over-represented, not that it under-represents and that it was a basis for the judge to go above his guideline. The second thing that I would have argued if I'd been given notice, and this goes to procedural and reasonableness, if I'd been given notice, the other thing I would have argued would have been in paragraph 6 of his pre-sentence report that he had good behavior at CCA. Now, I know Judge Adams puts a lot of stock on whether or not you got a ticket when you were at CCA. It's a rough place. There's a lot of people get tickets for having shanks and getting out of place and doing this and that. My client was in pretrial custody for a significant period of time, and he navigated all that time without getting one ticket while in custody, so I would have made strong arguments on those things, and I think I could have potentially gotten the judge not to go above the guideline, pointing to my client's OBIs. You weren't really, your client wasn't really prejudiced by any lack of notice because you were well-acquainted with your client's extensive criminal background, and I'm sure you came to the sentencing prepared to discuss all of that, so you weren't really taken by surprise in that sense, were you? Well, Judge, I do pride myself on taking on my feet, but I think if I'd been given notice, I certainly would have been more prepared and ready to rock and roll on some of those arguments, and maybe even some additional arguments, but those two certainly come to mind. So I think it is important for the trial court to give counsel notice if they're going to do an upward variance based on whatever it is they plan on doing it. You know, I wouldn't have probably been thinking about that because in my plea agreement, you have an agreement where you're not going to ask for a downward departure or downward variance, so I'm not really focused on thinking that I've got to attack to try to get the court back to baseline by arguing that my client's criminal history is actually over-represented, and you know, like I said, getting four criminal history category points. A criminal history category three, there's only six, and you're at three for one-pointers, and he's at the bottom end of that criminal history category three. So that, I think, is significant on the procedural aspect. Does the court have to give notice of potential upward variance? Well, it's an argument you can raise with respect to procedural unreasonableness if they don't. You know, it opens them up for a potential appellate argument if they don't, and I think there are significant reasons that they should, because your arguments would be more on point. You know, if you're thinking, look, I'm just arguing, you know, for a sentence within the range, that's the agreement that we have in our plea agreement, you know, you can't ask for anything. The government can't ask for above, I can't ask for below, you know, so you're more focused on, you know, just your typical arguments. But if the court's gonna go above and look at my client's criminal history and point to his OBIs, now my client's 50 years old, 51, give or take. He had three lifetime OBIs. The OBI that he was most recent was a first. It was counted as a first. So yes, he's got a couple OBIs, but he got three days in jail for that OBI. So it's not like, you know, the court's saying, well, we got to keep him off the street, he's a danger to the community. The municipal court judge he was in front of gave him three days. So, you know, I think this, when you look at the substance of reasonableness in my client's argument, it's a mind-run case. My client's possession of fentanyl, I think, is accounted for in the guidelines, and I think that this is the court pointing to the fact that it was fentanyl involved in this case, and he's given a higher sentence because it's fentanyl. You know, it seems to me that the guidelines account for the fact that it was fentanyl, and the judge is going above the guideline because it's fentanyl. You know, if my client was being accused or pled guilty to having a sawed-off shotgun... The judge didn't say that, that he was going above because of fentanyl. You're kind of reading his mind now, aren't you? I thought it was in there. I thought it was in there. I think he was specific, Judge, about that. I would have to review, and I could potentially... Counsel, you might want to wrap up. I'll wrap up. Judge, I had a bunch more to say, but six minutes. That's the best I got. Thank you. Thank you. Good morning, Your Honors. My name is Edward Heindel. I represent Alfred Sanders. Mr. Sanders, as part of his plea agreement in paragraph 21, signed a waiver of appeal. Mr. Sanders waived the following rights when he signed this. The right to appeal, the right to collaterally attack any judgment against him, and he also... any punishment in excess of the maximum punishment allowed by law, any punishment in excess of the guidelines. The trial judge did go over the appellate waiver. However, he went over the appellate waiver at the plea colloquy. However, we contend that this appellate waiver is not valid. This has four major issues regarding appellate waivers. Number one, that they're not knowingly, intelligently, and voluntarily made. Number two, I have here listed, we always have to be aware of the core concern of actual innocence, right? I mean, this court has got to be concerned, and I can give you a hypothetical in a few minutes about why that matters. I guess, really, the second reason that the court has cited in its case law, anyway, is that the waiver is not taken in accordance... I'm sorry, the plea and the waiver... the plea is not taken in accordance with Criminal Rule 11, or finally, that the sentence violates the law. We are alleging here that the court did not take this plea in accordance with Criminal Rule 11 because the court incorrectly stated the following at page ID 3632. The court says you would have the right to appeal any type of sentence outside the recommendations, but not to withdraw your plea. All right, I want to make two things, two points about this. Number one, the statement that you have no right to withdraw your plea is simply not true, and I'll give you a hypothetical to give you an example. The rule provides that he must have a just, fair and just reason in Criminal Rule 11. I don't have it right in front of me, but I'm sure you're familiar with the rule. So, let's take the following hypothetical. Let's say that out of the woodwork... Before you get into that, let me just ask you, has your client expressed the desire to withdraw his plea or filed a motion to withdraw his plea? Yes, I mean... He has? Well, not formally, not formally. Well, I mean, why are we getting into this if he's not trying to withdraw his plea? Because he's trying to lower his sentence. Well, I know that, but I mean, it's not an issue in the case, and you're spending time on this instead of other things. I have to get around this, Judge. I mean... Okay, go ahead. I shouldn't tell you how to make your argument. If we disagree with you about the appeal waiver, are there any of these enhancements that he can now still still challenge out, or are they both blocked by the appeal waiver if we are to find that the waiver is valid? If you find that the waiver is valid, I think the case is dismissed, because this court has ruled that defendants can waive many constitutional rights, including their right to appeal. If both of these enhancements were in the sentencing guidelines, the guidelines agree to in the plea? If the waiver of appeal is valid, yes. He waives his right to appeal, but I'm saying that this waiver is not valid for two reasons. Number one, the statement about you could never ever withdraw your plea is simply not the truth, because if somebody walks in the courtroom tomorrow and says, I'm the one who's selling all the drugs and he's innocent, and all of a sudden they find all this evidence that he's innocent, then he could withdraw his plea. Certainly he could file a motion, that would be a fair... Read again what the language used by the District Court that you say means that the court told him under no circumstances could he I'm on page 3632. You would have the right to appeal any type of sentence outside the recommendation of the parties, but not to withdraw your plea. Do you understand those things? The defendant, yes sir. Yes sir. Now there's more that the District Court talks about in terms of this waiver, and if you'd like me to go on, it'll take me a minute, but I can go on. No, that's all right. So first of all, that's incorrect. So he's not being given correct information. So he should be able to get around the appeal, and then the court can consider on the briefs whether or not his sentence was procedurally unreasonable. I want to note something else about this waiver of appeal, and that is that it's not clear. It's just, it's not clear if he can appeal, or any of the other defendants can appeal. It says, except any punishment in excess of the statutory maximum, or, and this is where I'm completely unclear, any sentence to the extent that it extends, exceeds the maximum of the sentencing imprisonment range, determined under the advisory sentence guidelines, in accordance with the sentence stipulations and computation in the agreement, using the criminal history category found applicable by the court. So what does this mean? Does this mean if people are stipulating to guideline calculations that anything excess of what they stipulate to, or does it mean anything in excess of the maximum? The waiver of appeal is not clear. I would ask you to consider his arguments about the procedural unreasonableness of his sentence by the briefs. Thank you. Thank you very much. May it please the court, Daniel Ranke on behalf of the United States. There's a number of issues that interrelate to some of the defendants. The double counting issue that it's, you know, that the criminal history is included already in the guidelines, it's kind of raised, it's raised by Radovich, Wright, Jackson, and Nasir Kahook, who's not here for argument, but he's part of this appeal. The arguments so far focus more on the meaningful relationship between the criminal history and underlying offense. We had that here, but we also had more importantly, the judge found the criminal history was uniquely problematic with a number of these defendants. With Radovich, the judge found that, and the judge did consider Radovich's prior drug conviction, the judge also found that the three domestic violence were uniquely problematic in this case, and that wasn't included in the guideline range. The guideline range is just the starting point, and the judge also was concerned that Radovich was still on state supervision for violating protective orders in 2022, and one of those violations was where he threatened to shoot his girlfriend. So this, the judge was concerned this wasn't just a domestic violence, this was almost a 20-year pattern of domestic violence that he found was uniquely problematic to this defendant, above and beyond what's included in the guideline range. Similarly, with Corey Wright, the judge considered his juvenile adjudication in the homicide of his, I think, one of his acqua friend, actually. He was adjudicated delinquent, he was detained until he was 20. As soon as he was released, he started committing crimes again, which the judge took into account. The judge is like, again, this is, you know, you didn't learn from this, and that's why he could consider it as part of his history and characteristics. He was detained in juvenile detention for four years, and then within a year, he's committing offenses again, some of which were drug offenses. And also, in this case, he committed an armed robbery of a Sunilco gas station, which he served a 31-month sentence for, and he was on supervision still for that case when he became involved in this drug conspiracy. So again, that's uniquely problematic to this defendant, to Wright. And there also, again, there were drug cases, there were drug convictions in that case too, which are related to the drug conspiracy in this case. Jackson, the judge looked at, again, a pattern. You know, it wasn't what sentence he received in, you know, state court for DUIs. It wasn't. The judge was looking at an overall pattern that he felt needed to be deterred and was dangerous to the public. He had a, Jackson had a pattern of driving under the influence. He'd done it for years. After his 2009 conviction for driving under the influence, he, two weeks after that, he was involved in a hit-and-run with property where he fled. Now the judge, I don't know that the judge said this, but I think, you know, that it's, he could imply there that he was probably under the influence of alcohol then too, given this history. When the judge found that that needed to be deterred and the public needed to be protected. Again, that's uniquely problematic to him, and that's not necessarily involved in the actual guideline calculation until you consider, you know, him as an individual and his individualized sentencing. And I don't know if you really want to talk about Kahook. He's not here, but the judge also looked at Kahook's history. He had two prior federal convictions. Now they weren't drug convictions. They were kind of white-collar crime convictions. One was, I think, a money laundering. One was something, you know, he had, Kahook ran a, his family ran convenience stores, and these crimes are all kind of connected to his convenience stores. In 2007, it was money laundering, and he created a fake charity, which he used as a front to operate an illegal gambling, an illegal gambling business. The judge was very concerned by that. The judge was like, you haven't learned by this. And he was more concerned by the fact that Kahook had over $300,000 in restitution to R.J. Reynolds, how he financed this thing back in 2007, as he took cigarette coupons, fraudulently cashed them, and used that money to do his gambling business. He owed $380,000 in restitution. He had only paid, I think he still owed $360,000 by the time he came into this case, and the judge felt that, again, the failure to pay restitution, this criminal history, and in federal court, which he'd said he rarely sees defendants with three convictions, was uniquely problematic and needed a sentence above the guideline range. Do you mind addressing, not on a criminal history front, but the four-point enhancement in Kearney? Because it seems, at least from reading the sentencing transcript, that the government is taking a very different position about the evidence to support that enhancement now than it did before the district court. We did not ask for that enhancement in district court, and that's accurate. We felt that there were pills. When they did the search warrant, they found pills in a drawer marked M30, which are, I think, markings for Percocet. He admitted to knowing they were fake Percocets, and that he had fentanyl, and he used powdered sugar to cut his fentanyl. Right, but before the district court, not only did you not ask for the enhancement, you said that there was no evidence that he marketed them in a false way or misrepresented them at all, and therefore, I can read it for you, there's a lack of evidence regarding the defendant himself was marketing these pills to customers as legitimate. I got a whole bunch of them in the record here, where you say there's no evidence about the marketing or no evidence that he actually misrepresented it. Clearly, he was very forthright to the cops. He was like, yeah, these are fake. They have the fentanyl in them. Maybe it is that there could be an inference or something that there could be a fact-finding. I'm just not seeing it in the transcript, and indeed, the government was quite clear below that there was not evidence to support it. We didn't ask for it. The probation department applied. Really, the question, and we didn't push for it. Obviously, in the hearing, your reading of the hearing is absolutely correct. We didn't push for it. We said we didn't have that, but the judges... You said there wasn't enough evidence. Well, it was part of our plea negotiations. We didn't feel that there was enough. So I'm trying to understand now why there is enough to show that he marketed them falsely. That he misrepresented our marketing. Right. We all know, and he concedes, and his counsel concedes that they're fake, that they have fentanyl in them. I think he's a distributor. He's kind of high up on the train. He could be selling them to other people who are going to sell them retails and say, hey, guys, these are all laced, or whatever it is. I'm just trying to figure out where the evidence is of the marketing and the misrepresentation, which seems necessary for this enhancement. Well, the judge, I think, took all the... It's proprietary to the evidence standard, which is lower. The judge took, taken together, Kearney's admissions, that the pills were marked as Percocet, that he was involved in fentanyl. He said that in his plea agreement. He said that all along. The judge, I think, then was reasonably found by pretense evidence that, okay, they're fake Percocets, they're marked as Percocets, he's been selling drugs, that our pretense evidence that that enhancement applies. So the judge took those, even though we didn't request it, we didn't even argue for it, we actually argued against it, but the judge isn't bound by what we argue. So isn't the question, did the judge abuse his discretion by indulging in a presumption that if you have this many pills known to be something that they are not represented to be, or represented to be something that you know that they aren't, if you have that many of them and you've been involved in drug dealing, you're going to be dealing these drugs as well? Right, and that's what the judge ultimately... Is that an abuse of discretion? It's our position that it's not an abuse of discretion. That's a reasonable inference that he can make based on the factors that were presented to him by a preponderance of the evidence. Whether we asked for it or not, it's still up to the judge to decide whether he believed, and under those circumstances, we don't believe it's an abuse of discretion. Thank you. There's an issue, a number of defendants make an issue, or raise the issue about notice of an upward variance. I think that's Wright and Jackson. As the court pointed out, there's no requirement that a judge give a notice of a possible upward variance. There is a possible upward departure, but there is no notice requirement for an upward variance. Judge Adams gives it a lot, like the majority of the time. I don't know how that's developed, but over the years, he's gotten into that habit and he does give it almost all the time. He gave it in Wright, he did not give it in Jackson. In Wright, the argument was that the notice was insufficient. It just listed general history and characteristics, nature and circumstances of the offense. They relied on Coppinger, a case of the United States v. Coppinger, which is actually one of Judge Adams' cases. I actually had that case on appeal. This isn't Coppinger, though. In Coppinger, Judge Adams relied on undisclosed PSRs that he reviewed from co-defendants in a real estate scam. He viewed these co-defendants also as victims of Coppinger, to a certain extent. He relied on these. He didn't give them over to the parties. He relied on these to vary upward for Coppinger. This court found, no, no, you can't do that. You can't rely on undisclosed information to vary up. You have to get that to the parties, let them look at it, give them the opportunity to respond. In this case, there was nothing either with Wright or Jackson that wasn't either in the PSR. It actually wasn't argued during the sentencing. The criminal history was well known with both defendants. The PSR listed it. It was actually discussed at sentencing. You have to show either some type of surprise or prejudice. I think there's a Rossi case that says that also, as well as Coppinger. Coppinger does, and Irizarry also gives the opportunity to say, if there's surprise and if you can show prejudice, the possible notice of an upward variance is appealable. But here, everything that Judge Adams relied upon was well known to both Wright and Jackson. There was no surprise, no prejudice. It's our position that the judge's notice of upward variance was sufficient in Wright, and in Jackson, he didn't give one, which is different from him. He normally does, and I don't know why he didn't. But everything he relied on in Jackson was in the PSR, and it was well known to the parties at the time. And it wasn't surprise or a showing of prejudice. As far as the Sanders plea agreement, what the judge told Sanders was that he would not be permitted to withdraw his guilty plea if he's dissatisfied with his sentence. That's in every plea agreement in the Northern District of Ohio. Every judge says that. It's been approved by this court, and I cite some cases, and I won't go through them right now, but it's been approved by this court in at least four cases where that language is fine. He didn't say he couldn't ever withdraw his plea agreement. He said he would not be permitted to withdraw his plea agreement based on just dissatisfaction with his sentence, and that's proper. There's nothing there that would mean like, well, okay, you can never withdraw your plea agreement. If he'd said, you can never withdraw your plea agreement, yeah, that's true. But he didn't say that. He said, you cannot be permitted to... You would not be permitted on this basis, on just dissatisfaction with your sentence, and that's entirely appropriate. Now, in his plea agreement, he agreed to the drug premises enhancement, which in this case, I think he had three residences or locations that he was using to distribute drugs. He sent people to those locations to be resupplied, to pay him. He had dominion and control over these places, which is probably why he agreed to it in the plea agreement. So that is waived, because that was in the plea agreement, and the plea agreement, the appeal out waiver was proper. So that part's waived. Even if it wasn't, it's our position that the factors I just mentioned support the application of that enhancement. There's a second enhancement, though, that was not in the plea agreement, and it was the leadership enhancement for five or more people. The judge applied that based on a number of factors. Again, Sanders controlled... He sold drugs to, well, everybody in this appeal, all six defendants. He sold it to a lot more people, so there were five or more people. He directed them to go to certain residences. He directed them... He asked for payment from them. Some of the co defendants referred to themselves as Sanders soldiers. Let's see, there was... He had another co defendant who could crack cocaine for him, Derek Henderson. So the judge on probation believed that those factors supported the enhancement. Now, there were certain factors that weren't there. There was no indication that he took a larger percentage of the profits, but every factor doesn't have to be there. Those are just a non exhaustive list, and even though that isn't there, the other factors support the application of that enhancement. And even if we... I'll just ask you the same question I asked the defendants counsel here. If we agree with you that the appeal waiver is good, we still would need to reach the issue about the leadership enhancement. I believe so. That's correct. Okay, because I think I heard your friend is saying that you just dismissed, but no, we would still... Because the leadership enhancement was not within the scope of the plea agreement. Is that correct? I think that's still on the table. The leadership enhancement wasn't part of the plea agreement, and it was, again, that was something probation and determination determined was applicable. So I think that's still... Since it's not in the plea agreement, it's not part of the appellate waiver. Gotcha. Let's see. It's kind of a lot here, so I'm trying to make sure I'm going over everything. Kahuk, I don't know if this court is interested at all in the restitution argument in Kahuk. Well, it's before us, so you should feel free to address it. Okay. One of Judge Adams' issues with Kahuk, again, was that he hadn't paid restitution for since 2000, I think. 13 was the last time he made a payment. He still owed over $300,000. Judge Adams initially wanted to make it part of this judgment. The parties asked him to hold off on that so it could be researched. We went back, researched it, found that the judge did not have authority to do that, but he could possibly do it... Well, we didn't... You can't really tell the judge what he can do or what he can't do, but we did point out that there are special conditions of supervised release that are similar, and that the fact that he didn't have the authority to order it in this case didn't mean that he couldn't order it as a special condition of supervised release. Ultimately, that's what Judge Adams did. It's similar to... There's already financial conditions in every supervised release. There's windfall provisions, there's different things. This is similar to pay your back taxes as a special condition of supervised release. It's pay child support. It's just paying in legal obligation that you need to pay. And so the judge's imposition of this as a special condition of supervised release was... If he couldn't make it part of this sentence, but he could make it part of a condition for supervised release, and then it doesn't get done as part of supervised release, he gets penalized for it. How different is that from making it part of this sentence? Well, it's similar to... He would be penalized for it, I guess, but if he doesn't pay... How the judge set it up was 10% of his monthly gross income until it's paid or his supervision ends. So I don't know if he really gets... If he doesn't pay it, I don't know what you're gonna do. Because he has till the end of supervision. It's a strange... In that way, it's kind of strange, because it doesn't really... You do wonder, okay, what if he doesn't do it and supervision ends? Where is he at that point? And he's got a 10 year term with supervised release, so he's got 10 years to do this. But could it be viewed as a violation of supervised release, which might subject him then to an additional prison term? It could, but I think, again, that's no different than if you had to pay any legal obligation, child support. Child support comes to mind the most, because that's something that wouldn't necessarily be... In a tax case, pay your back taxes is usually part of that case, right? It would be part of any kind of tax conviction. Child support normally is in state court. It's not part of that case, but judges have the authority to do that. So that's where Judge Adams came down, and that's what... We don't think he abuses discretion, setting it up in that way. Thank you. Well, if there are no further questions, I would ask that this court affirm Judge Adams, and thank you. Thank you very much. There's nothing further from counsel. The court would like to thank Defense Counsel. I noticed that all of the Defense Counsel are appointed pursuant to the Criminal Justice Act, and I know you do that as a service to the court and our system of justice, and you've all well represented your clients, so we very much appreciate your efforts in that regard.